UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPERATING ENGINEERS' PENSION TRUST FUND; GIL GROSTHWAITE AND RUSS BURNS, as Trustees,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>CLARK'S WELDING AND MACHINE, a California partnership, aka CLARK'S WELDING, aka CLARK'S WELDING AND MACHINING; SYLVESTER HABERMAN, individually, and FRANZ EDELMAYER, individually,<br><br>　　　　　Defendants. | Case No. 09-0044 SC<br><br>ORDER DENYING MOTION <u>TO DISMISS</u> |

## I. **INTRODUCTION**

This matter comes before the Court on the Motion to Dismiss ("Motion") filed by Defendants Clark's Welding and Machine ("Clark's Welding"), Sylvester Haberman ("Haberman"), and Franz Edelmayer ("Edelmayer") (collectively "Defendants"). Docket No. 10. Plaintiffs Operating Engineers' Pension Trust Fund ("Operating Engineers"), Gil Crosthwaite ("Crosthwaite"), and Russ Burns ("Burns"), as Trustees (collectively "Plaintiffs") filed an Opposition, and Defendants filed a Reply. Docket Nos. 11, 15. For the reasons stated herein, the Motion is DENIED.

Defendants also submitted a Request for Judicial Notice ("RJN"). Docket No. 8. Defendants request the Court to take

notice of the Complaint in Case No. 03-2544 JSW, filed in this Court on May 29, 2003, the Stipulation for Dismissal filed in the same case on February 13, 2003, and the Order of Dismissal filed on March 19, 2003. See RJN Ex. A ("Walters Compl."), Ex. B ("Stipulation"; "Order"). The Court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court may take notice of its own records in other cases. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). The Court may take notice of other court proceedings that have a direct relation to matters at issue. See United States ex rel. Robinson Racheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

Here, the Walters Complaint is offered so that the Court can take notice of the fact of the previous lawsuit, and the contents of the Stipulation and Order may determine whether Plaintiffs are entitled to sue. These documents are therefore directly related to the matter before the Court. Also, the Court may take judicial notice of these documents without converting the 12(b)(6) motion into a motion for summary judgment. See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). The Court GRANTS Defendants' request for judicial notice.

**II. BACKGROUND**

This case is not the first time Operating Engineers have sued the Defendants. On May 23, 2003, Ken Walters ("Walters"), and Don

2

Case 3:09-cv-00044-SC   Document 25   Filed 05/08/09   Page 3 of 13

Doser ("Doser"), in their capacities as trustees for three pension funds, including Operating Engineers, brought an action against Defendants "seeking to enforce Defendant's [sic] obligation to contribute fringe benefits to the Trust Funds under the collective bargaining agreement." Walters Compl. at 2. About nine months later, in February 2004, the pension funds, Clark's Welding and Edeymayer filed a Stipulation for Dismissal. See Stipulation. It states that Clark's Welding ceased operations in July of 2003. Id. ¶ 8. Clark's Welding and Edelmayer agreed to pay the pension funds $36,597.19, and agreed to make thirty-six (36) monthly payments of $680.89, in order to satisfy delinquent and unreported contributions to the pension funds. Id. ¶¶ 12-13. The Stipulation states that:

> This Agreement embodies the entire Agreement between the parties hereto.  All prior understandings and agreements by and between the parties hereto are merged into and superseded by this Agreement and no party released herein shall be bound by or liable for any statement, representation, promise, inducement or understanding of any kind or nature not set forth herein.  This Agreement is the product of negotiation and preparation by and amount [sic] the parties hereto and their attorneys, if any.  Therefore, the parties acknowledge and agree that this Agreement shall not be deemed to have been prepared or drafted by one party or another, and that it shall be construed accordingly.

Id. ¶ 21.  It also provides that:

> From the date of execution of this stipulation forward, to the extent that Defendant Clark's Welding and Machine and/or Franz Edel Mayer resume business under any name-style or business form, the Defendants agrees [sic] to comply with the requirements contained in Section 12.01.00 of the Collective Bargaining

3

>Agreement by submitting . . . both an Employer Report of Contributions detailing the individuals who performed work . . . , the number of covered hours worked . . . and the amount owed to the . . . [pension funds], along with a check . . . for the corresponding amount due.

Id. ¶ 15. That is the only reference in the Stipulation to Clark's Welding and Edelmayer's remaining obligations under the Collective Bargaining Agreement ("CBA"). See id. Based on the Stipulation, the Honorable Jeffrey S. White dismissed the claims against Clark's Welding and Edelmayer. See Order.

On January 7, 2009, Plaintiffs filed their Complaint against Defendants seeking payment of withdrawal liability in the sum of $330,921. Compl., Docket No. 1, ¶ 1. Plaintiffs' suit arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001-1461. Id. The Complaint alleges that Defendants withdrew from participation in the Operating Engineers' Pension Trust Fund in January 2003, and that Plaintiffs notified Defendants of the assessed withdrawal liability on June 26, 2008. Id. ¶¶ 1, 10, 11. On October 10, 2008, Plaintiffs notified Defendants they would be in default if they failed to cure nonpayment within sixty days. Id. ¶ 14. The Complaint alleges that Defendants have not made any withdrawal liability payments. Id. ¶ 15. Defendants move to dismiss the Complaint based on the terms of the Stipulation. Mot. at 1.

### III. **LEGAL STANDARD**

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss

4

tests the sufficiency of the complaint.  Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  For purposes of such a motion, the complaint is construed in the light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Everest & Jennings, Inc. v. Am. Motorists Ins. Co.</u>, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor of the plaintiff.  <u>Id.</u>

**IV. DISCUSSION**

    **A. No Requirement to Arbitrate**

Defendants contend that Plaintiffs' claim for withdrawal liability against Clark's Welding and Edelmayer should be dismissed because "the Stipulated Settlement absolved them from any liability related to their obligations to . . . [Operating Engineers] in the event of withdrawal."  Mot. at 6.  Plaintiffs respond that Defendants' Motion is improper because any dispute concerning a determination of withdrawal liability must be resolved through arbitration.  Opp'n at 6.  Plaintiffs contend that by failing to demand arbitration, Defendants waived their right to raise affirmative defenses, and the Plaintiffs' assessment of withdrawal liability is now final and binding on Defendants.  <u>Id.</u> at 7.

Under ERISA, as amended by the MPPAA, an employer who

1  withdraws from an underfunded pension plan is required to pay
2  "withdrawal liability," an amount equal to that employer's pro
3  rata share of the plan's unfunded vested benefits, subject to
4  certain adjustments.  29 U.S.C. §§ 1381, 1391.  Section 1401(a)(1)
5  of ERISA provides: "Any dispute between an employer and the plan
6  sponsor of a multiemployer plan concerning a determination made
7  under sections 1381 through 1399 of this title shall be resolved
8  through arbitration."  Id. § 1401(a)(1).  "If no arbitration
9  proceeding has been initiated . . . the amounts demanded by the
10 plan sponsor under section 1399(b)(1) of this title shall be due
11 and owing on the schedule set forth by the plan sponsor.  The plan
12 sponsor may bring an action in a State or Federal court of
13 competent jurisdiction for collection."  Id. § 1401(b)(1).

14      Defendants do not dispute that they failed to initiate
15 arbitration.  See Reply at 1.  Instead, Defendants contend that
16 the question of whether the Stipulation released them from
17 withdrawal liability is not a dispute concerning a determination
18 made under sections 1381 through 1399 of ERISA, and therefore they
19 were not required to submit the issue to an arbitrator.  See id at
20 3-11.

21      The Court finds that Defendants were not required to initiate
22 arbitration.  The central issue here is whether the February 2004
23 Stipulation released Defendants from withdrawal liability such
24 that Plaintiffs were not entitled to seek such payments over four
25 years later on June 26, 2008.  Disputes that have to be arbitrated
26 concern "the establishment, computation and collection of
27 withdrawal liability."  Shelter Framing Corp. v. Pension Benefit

6

1 Guar. Corp., 705 F.2d 1502, 1509 (9th Cir. 1983), rev'd on other
2 grounds, 467 U.S. 717 (1984).  Disputes concerning the
3 establishment of withdrawal liability turn on whether the
4 employer's conduct constitutes a complete or partial withdrawal
5 from a pension plan.  See 29 U.S.C. § 1381; see also Teamsters
6 Pension Trust Fund-Bd. of Trustees of the W. Conference v. Allyn
7 Transp. Co., 832 F.2d 502, 505-06 (9th Cir. 1987).

8     In Board of Trustees of Trucking Employees of North Jersey
9 Welfare Fund, Inc. v. Centra, the Third Circuit determined that
10 the issue of whether there had been a breach of a settlement
11 agreement did not fall into any of the categories that the MPPAA
12 deems arbitrable.  983 F.2d 495, 506-07 (3d Cir. 1992)("Centra").
13 In In re Centric Corp., the Tenth Circuit determined that the
14 defense of laches was not barred by a failure to arbitrate.  901
15 F.2d 1514, 1518-19 (10th Cir. 1990).  The Tenth Circuit noted that
16 "[g]enerally . . . the only defenses which are waived by a failure
17 to timely initiate arbitration are those which go to the merits of
18 the liability assessment itself."  Id. at 1518.

19     Here, the Court finds that the question of whether the
20 Stipulation releases Defendants from the requirement to pay
21 withdrawal liability is not an issue concerning the establishment,
22 computation or collection of withdrawal liability.  This question
23 does not go to the merits of the withdrawal liability assessment
24 itself, but instead raises the issue of whether Operating
25 Engineers are entitled to seek such payments from the Defendants
26 and to sue them for failing to pay.  Therefore, Defendants did not
27 waive the right to defend themselves by failing to arbitrate the
28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

issue of whether the Stipulation releases them from liability.

The Court finds that the Report and Recommendation of Magistrate Judge Eaton, in <u>I.L.G.W.U. National Retirement Fund v. W. Helena-Helena Sportswear, Inc.</u>, No. 96-1007, 1996 U.S. Dist. LEXIS 20635 (S.D.N.Y. July 25, 1996)("<u>West-Helena</u>"), is distinguishable. In that case, the fund sent the employer a notice of withdrawal liability less than one month after the parties entered into a settlement agreement releasing the defendants from further liability for delinquent contributions. <u>Id.</u> at *6-7. Magistrate Judge Eaton determined that the employer was precluded from asserting a defense based on the effect of the settlement agreement because the employer failed to initiate arbitration or sue for injunctive or declaratory relief within the sixty-day deadline required by the MPPAA. <u>Id.</u> at *11-12. Magistrate Judge Eaton took note of the Second Circuit's determination that:

> Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who failed to arbitrate disputes over withdrawal liability . . . in a timely manner . . . . If a party wishes to seek judicial resolution of its dispute without first submitting to arbitration it should seek declaratory and/or injunctive relief against the imposition of withdrawal liability . . . . The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely "a self-inflicted wound."

<u>Id.</u> at *14-15 (citations and italics omitted)(quoting <u>I.L.G.W.U. Nat'l Ret. Fund v. Levy Bros. Frocks</u>, 846 F.2d 879, 887 (2d Cir. 1988)). Relying on this reasoning, Magistrate Judge Eaton

determined that "the defendants chose to delay, do nothing and force the Fund to sue. As a result, the defendants must suffer the 'self-inflicted wound' of default." Id. at *18.

Here, despite the fact that Clark's Welding withdrew from the fund in early to mid 2003, Operating Engineers waited until June 2008 to notify Defendants of its assessment of withdrawal liability. Hence, to the extent there are concerns in this case about timely resolution of withdrawal liability disputes, Operating Engineers would appear to be more culpable than Defendants. Furthermore, the court, in West Helena, determined that there was no unfairness in enforcing the arbitration requirement because it was "totally unreasonable" for the employer to contend that a release for delinquent contributions included withdrawal liability. 1996 U.S. Dist. LEXIS 20635, at *24-29. Here, by contrast, the release language in the Stipulation is broad. The Stipulation states "no party released herein shall be bound by or liable for any statement, representation, promise, inducement or understanding of any kind or nature not set forth herein." Stipulation ¶ 21. The Defendants can reasonably contend that this language was intended to include a release of withdrawal liability. Finally, the Court notes that Magistrate Judge Eaton did not consider the Third Circuit's determination, in Centra, that questions concerning the validity and effect of a prior settlement agreement do not have to be submitted to an arbitrator. See 983 F.2d at 506-07. The Court concludes Defendants were not required to initiate arbitration.

///

9

### B.  <u>**Stipulation for Dismissal and Release of Liability**</u>

Based on the parties' submissions, the Court is unable to conclude the Complaint should be dismissed.  Defendants' contend the Stipulation absolves them from any liability related to their obligations in the event of withdrawal from the pension fund.  Mot. at 7-10.  The Stipulation states, "[a]ll prior understandings and agreements by and between the parties hereto are merged into and superseded by this Agreement and no party released herein shall be bound by or liable for any statement, representation, promise, inducement or understanding of any kind or nature not set forth herein."  Stipulation ¶ 21.

Defendants contend that at the time Operating Engineers signed the Stipulation in February 2004 they were aware Clark's Welding had withdrawn from the pension fund.  <u>See</u> Mot. at 6.  In the Stipulation, Defendants represented that Clark's Welding ceased operations in July of 2003.  Stipulation ¶ 8.  In the Complaint, Plaintiffs allege that Defendants withdrew from participation in the fund on or about January 2003.  Compl. ¶¶ 1, 10.  Defendants point out that the Stipulation contains only one provision maintaining Clark's Welding and Edelmayer's liability to Plaintiffs under the CBA, and that provision only takes effect to the extent they resume business.  <u>See</u> Mot. at 9; Stipulation ¶ 15.  Since the Stipulation contains an integration clause, broad release language, one provision maintaining an obligation to resume contribution payments, and no mention of withdrawal liability, Defendants contend it absolves them of any obligation to pay withdrawal liability.  Mot. at 7-10.

Although Defendants' contentions are certainly reasonable, they are not sufficient to warrant dismissing the Complaint. In Centra, the settlement agreement released the parties from all claims "including but not limited to the claim for withdrawal liability." 983 F.2d at 499 n.4. Here, the Stipulation is not as clear. Without more, the Court cannot conclude that the release of liability for "any statement, representation, promise, inducement or understanding" includes a release for withdrawal liability. This broad release may extend to withdrawal liability, but the lack of any mention of withdrawal liability could also mean that the Stipulation was not meant to extend that far. Similarly, the fact that the Stipulation contains one provision maintaining Defendants' liability for contributions could mean that the Defendants were released from all other forms of liability, but it could also mean that the settlement was limited to liability for unpaid contributions.

At this stage of the proceedings, any ambiguity in the documents must be resolved in Plaintiff's favor. See Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995). A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim. Graehling v. Vill. of Lombard, III, 58 F.3d 295, 297 (7th Cir. 1995). The Court notes that, under California law, parties can introduce extrinsic evidence to prove a meaning to which the language of an agreement is reasonably susceptible. Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968). Extrinsic evidence concerning the parties'

11

intentions is likely to clear up this ambiguity concerning whether the release language in the Stipulation extends to withdrawal liability. The terms of the Stipulation, by themselves, do not warrant dismissing the Complaint.

### C. **Waiver**

Defendants argue that Plaintiffs waived their right to bring this suit because Plaintiffs were aware of Defendants' withdrawal from the fund before entering into the Stipulation, Plaintiffs "expressly superseded any such [withdrawal] liability with the settlement," Plaintiffs led Defendants to believe that the Stipulation satisfied all of Defendants' obligations to the fund, and Plaintiffs did not notify Defendants of their intention to seek withdrawal penalties until June 26, 2008. Mot. at 10-11. While the Court is certainly troubled by Plaintiffs' delay in seeking withdrawal liability, Defendants' waiver argument depends on construing the Stipulation as releasing Defendants from withdrawal liability. As explained above, the Court cannot make that determination based on the parties' submissions at this early stage of the proceedings. Therefore, the Court cannot dismiss the Complaint based on this waiver argument. Also, since the Court cannot conclude that Clark's Welding is absolved of withdrawal liability, the Court need not reach Defendants' argument that no liability can rest on an individual partner when the partnership has been absolved of liability for the same conduct. See Mot. at 11-13.

///

///

12

**V.   CONCLUSION**

For the reasons stated above, the Court DENIES Defendants' Motion to Dismiss.

IT IS SO ORDERED.

Dated: May 8, 2009

_____
UNITED STATES DISTRICT JUDGE

13