UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>OPERATING ENGINEERS' PENSION TRUST<br>FUND; GIL CROSTHWAITE AND RUSS<br>BURNS, as Trustees,<br><br>        Plaintiffs,<br><br>v.<br><br>CLARK'S WELDING AND MACHINE, a<br>California partnership, aka<br>CLARK'S WELDING, aka CLARK'S<br>WELDING AND MACHINING; SYLVESTER<br>HABERMAN, individually, and FRANZ<br>EDELMAYER, individually,<br><br>        Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No. 09-0044 SC<br><br>ORDER GRANTING IN<br>PART AND DENYING IN<br>PART PLAINTIFFS'<br>MOTION FOR SUMMARY<br><u>JUDGMENT</u></td></tr>
</table>

## I.   **INTRODUCTION**

This matter comes before the Court on the Motion for Summary Judgment ("Motion") filed by Plaintiffs Operating Engineers' Pension Trust Fund ("Operating Engineers"), Gil Crosthwaite ("Crosthwaite"), and Russ Burns ("Burns"), as Trustees (collectively "Plaintiffs").  Docket No. 50.  Defendants Clark's Welding and Machine ("Clark's Welding"), Sylvester Haberman ("Haberman"), and Franz Edelmayer ("Edelmayer") (collectively "Defendants") filed an Opposition, and Plaintiffs filed a Reply. Docket Nos. 77, 78.  For the reasons stated herein, the Motion is GRANTED IN PART and DENIED IN PART.

United States District Court

For the Northern District of California

**II.   BACKGROUND**

    **A.   Procedural Background**

On January 7, 2009, Plaintiffs filed their Complaint against Defendants seeking payment of withdrawal liability in the sum of $330,921. Docket No. 1 ("Compl.") ¶ 1. On May 8, 2009, the Court denied Defendants' Motion to Dismiss. Docket No. 25. Defendants filed their Answer on May 21, 2009. Docket No. 30 ("Answer"). On July 28, 2009, the Court granted in part and denied in part Plaintiffs' Motion to Strike. Docket No. 43.

After the parties filed their summary judgment papers, the Court granted Defendants' request for a Rule 56(f) continuance to allow the parties to address the impact of the continued deposition testimony of Tracy Mainguy ("Mainguy") on the issues raised in Plaintiffs' Motion for Summary Judgment. Docket No. 105 ("Order Requiring Supplemental Briefing"). On January 15, 2010, Defendants submitted a Supplemental Brief. Docket No. 112 ("Defs.' Supplemental Br."). On January 20, 2010, Plaintiffs filed a response. Docket No. 113 ("Pls.' Supplemental Br.").

    **B.   Factual Background**

The following facts are not in dispute. Edelmayer and Haberman purchased Clark's Welding on or around 1975, subject to a Shop Agreement with Operating Engineers. Edelmayer Decl. ¶ 2.[1] Edelmayer and Haberman closed their business on or around July 31, 2003, and they sold their assets to a former employee, Robert Lee Boyd. Id. ¶ 5.

---

[1] Franz Edelmayer, Defendant in this lawsuit, filed a Declaration in Support of Defendants' Opposition. Docket No. 77-5.

2

**United States District Court**
For the Northern District of California

On May 23, 2003, Ken Walters ("Walters"), and Don Doser ("Doser"), in their capacities as trustees for a number of pension funds, including Operating Engineers, brought an action against Defendants seeking to enforce Defendants' obligation to contribute fringe benefits to the pension funds.  Thurn Decl. Ex. A ("Walters Compl.") at 2.[2]  About nine months later, in February 2004, the pension funds, Clark's Welding and Edeymayer filed a Stipulation for Dismissal.  See Thurn Decl. Ex. G ("Stipulation").  The Stipulation notes that Clark's Welding was required to make contributions to pension trust funds pursuant to a Collective Bargaining Agreement ("CBA").  Stipulation ¶¶ 1-2.  The plaintiffs to the prior action also asserted they were entitled to liquidated damages, interest, and attorney's fees.  Id. ¶¶ 6, 9.

In the Stipulation, Clark's Welding agreed to pay $36,597.19 for delinquent principal contributions, and $20,500 for unpaid contributions revealed by an audit.  Stipulation ¶ 11.  The $36,597.10 was to be paid in a lump sum, and the $20,500 in monthly payments.  Id. ¶¶ 12-13.  The pension trust funds waived their asserted right to liquidated damages and interest, and each side agreed to bear its own legal costs, unless there was a default in payment.  Id. ¶¶ 14, 16, 17.  The final paragraph of the Stipulation states:

> This Agreement embodies the entire Agreement between the parties hereto.  All prior understandings and agreements by and between the parties hereto are merged into and superseded by

---

[2] Richard Thurn ("Thurn"), an attorney and co-owner of Gray & Thurn, Inc., filed a declaration in support of Defendants' Opposition to Plaintiffs' Motion.  Docket No. 77-6.

3

United States District Court
For the Northern District of California

> this Agreement and no party released herein shall be bound by or liable for any statement, representation, promise, inducement or understanding of any kind or nature not set forth herein. This Agreement is the product of negotiation and preparation by and amount [sic] the parties hereto and their attorneys, if any. Therefore, the parties acknowledge and agree that this Agreement shall not be deemed to have been prepared or drafted by one party or another, and that it shall be construed accordingly.

Id. ¶ 21.

On May 15, 2008, over four years after this Stipulation, Shaamini A. Babu ("Babu"), an attorney for Operating Engineers, sent Clark's Welding a letter stating that the pension fund had assessed withdrawal liability of $330,921 against Clark's Welding on December 10, 2007. Thurn Decl. Ex. H ("May 15, 2008 Letter") at OE3PP000729. Defendants claim they did not receive the December 10, 2007 notice because it was sent to Mr. Boyd at All States W.E.S.T. Id. ¶ 17. On May 21, 2008, Babu sent Thurn, an attorney for Clark's Welding, a copy of the December 10, 2007 notice of withdrawal liability. Id. Ex. I ("May 21, 2008 Letter").

On June 26, 2008, Plaintiffs sent Thurn another notice of withdrawal liability. Id. Ex. J ("June 26, 2008 Notice"). It states that the withdrawal liability of Clark's Welding is $330,921. Id. at OE3PP000709. It states that Defendants had ninety days from receipt of the letter to ask the Board of Trustees to review the determination of withdrawal liability, and that disputes should be resolved through arbitration. Id. at OE3PP000710.

4

Defendants did not seek review of the withdrawal liability determination, and they did not initiate arbitration.  Opp'n at 4; Thurn Decl. ¶ 18.  On January 7, 2009, Plaintiffs filed their Complaint against Defendants seeking payment of withdrawal liability in the sum of $330,921.  Compl. ¶ 1.

**III.  LEGAL STANDARD**

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

**IV.  DISCUSSION**

**A.  Statutory Framework**

Under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act

5

**United States District Court**
For the Northern District of California

("MPPAA"), an employer who withdraws from an underfunded pension plan is required to pay "withdrawal liability," an amount equal to that employer's pro rata share of the plan's unfunded vested benefits, subject to certain adjustments.  29 U.S.C. §§ 1381, 1391.  The MPPAA was enacted in 1980 based on Congressional and agency findings that "ERISA did not adequately protect plans from the adverse consequences that resulted when individual employers terminate their participation in, or withdraw from, multiemployer plans."  Pension Benefit Guaranty Corporation v. R.A. Gray and Co., 467 U.S. 717, 722 (1984).  The amendments were designed to reduce the incentive for employers to withdraw from multiemployer plans and to lessen the impact and burdens on plans when employers do withdraw.  Id. at 724 n.3.  An employer incurs withdrawal liability when it effects a "complete withdrawal" from the plan, which occurs when the employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan."  29 U.S.C. § 1383(a).

The Act does not call upon the employer to propose the amount of withdrawal liability.  Rather, it places the calculation burden on the plan's trustees.  The trustees must set an installment schedule and demand payment "[a]s soon as practicable" after the employer's withdrawal.  Id. § 1399(b)(1).  On receipt of the trustees' schedule and payment demand, the employer may invoke a dispute-resolution procedure that involves reconsideration by the trustees and, ultimately, arbitration.  Id. §§ 1399(b)(2), 1401(a)(1).  "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under

sections 1381 through 1399 of this title shall be resolved through arbitration." Id. § 1401(a)(1). "If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." Id. § 1401(b)(1).

### B.   Evidentiary Objections

Defendants filed thirty-two evidentiary objections related to Plaintiffs' Motion. Docket No. 77-7 ("Evidentiary Objections"). Defendants' first eight objections concern the Schumacher Declaration.[3] Id. at 2-6. Because the Court does not rely on the statements in this declaration, it is not necessary for the Court to rule on these objections. Even if the Court had sustained these objections, it would not have affected how the Court rules on this Motion.

Objections Nos. 9 to 21 concern statements in, and exhibits attached to, the Babu Declaration.[4] The Court SUSTAINS Objections Nos. 12, 13 and 21 because of Plaintiffs' failure to disclose their Delinquency Collections Procedures, which form the basis for Plaintiffs' damages calculations. The Court addresses Plaintiffs' claims for liquidated damages, interest, and attorney's fees and

---

[3] Michael Schumacher ("Schumacher"), the Executive Vice-President of Associated Third Party Administers, filed a Declaration in Support of Plaintiffs' Motion for Summary Judgment. Docket No. 69.

[4] Shaamini A. Babu ("Babu"), an associate at Saltzman & Johnson Law Corporation, filed a Declaration in Support of Plaintiffs' Motion for Summary Judgment. Docket No. 51.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    costs in Part IV(K), _infra_.

2        With regard to Objection 18, Plaintiffs failed to include

3    the reporter's certification with its deposition extracts.   _See_

4    Evidentiary Objections at 12; Babu Decl. Ex. I, J, K, L, M.

5    However, Plaintiffs have provided the Court with a copy of the

6    reporter's certifications in a supplemental declaration, and Ms.

7    Babu declares she was present at the depositions.[5]   _See_

8    Supplemental Babu Decl. ¶ 3, Ex. Q.   The Court finds that

9    Defendants were not prejudiced by the omission, and OVERRULES

10   Defendants' objection.

11       The Court has reviewed the other evidentiary objections and

12   finds that they are without merit.   The Court OVERRULES Objection

13   Nos. 9 to 11, Objection Nos. 14 to 17, and Objection Nos. 19 and

14   20.   The Court finds no basis to question the authenticity of the

15   documents at issue in these objections, which include the 2004

16   Stipulation.

17       Objections 22 to 32 concern statements in Plaintiffs' Motion

18   and are therefore not proper subjects for evidentiary objections.

19   As such, the Court will not rule on these objections.   The Court

20   did not rely on any of these statements in deciding this Motion.

21   Even if the Court had sustained Objections 22 to 32, it would not

22   have affected how the Court rules on this Motion.   The Court

23   addresses the parties' contentions regarding what the admissible

24   evidence shows in the remainder of this Order.

25   ///

26

27       [5] Babu's Supplemental Declaration is Docket No. 82.

28                              8

United States District Court
For the Northern District of California

### C. Non-Parties

Plaintiffs suggest that non-parties to this action, Edelmayer & Haberman, Inc. ("EHI"), Capital Cylinder Head Shop ("Capital") and Precision Metal & Grinding ("Precision") are jointly and severally liable for the withdrawal liability of Clark's Welding under 29 U.S.C. § 1301(b), and they request that these non-parties be named as judgment debtors. Mot. at 7. For purposes of ERISA withdrawal liability, trades or businesses under common control are to be treated as a single employer. 29 U.S.C.A. § 1301(b)(1). However, controlled group members are jointly and severally liable under ERISA only if they are parties to the action. Central States, Southeast and Southwest Areas Pension Fund v. Mississippi Warehouse Corp., 853 F. Supp. 1053, 1059 (N.D. Ill. 1994). Here, EHI, Capital, and Precision are not parties to this action. See Compl. ¶¶ 3-5. Therefore, the Court DENIES Plaintiffs' request to name these non-parties as judgment debtors.

### D. Defense of Laches

Defendants' sixth affirmative defense states that Plaintiffs' claim is barred by the equitable doctrine of laches. Answer at 6. Plaintiffs contend Defendants are barred from raising the defense of laches because they failed to initiate arbitration. Mot. at 17. The Court agrees with Plaintiffs.

Under ERISA, as amended by the MPPAA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Id. § 1401(a)(1). The defense of laches calls into question whether

9

the trustees demanded payment "[a]s soon as practicable" after the employer's withdrawal.  See id. § 1399(b)(1).  It raises a factual issue that should have been submitted to an arbitrator.  Here, Defendants did not initiate arbitration, despite the fact that the June 26, 2008 Notice informed Defendants of their right to seek review of the withdrawal liability determination and to initiate arbitration.  See June 26, 2008 Notice at OE3PP000710.  Hence, Defendants are barred from pursuing the defense of laches in this Court.

The facts of this case are similar to the facts of Vaughn v. Sexton, where the Court of Appeals for the Eighth Circuit determined that the defense of laches was waived even though a pension plan did not notify the employer of its withdrawal liability assessment until almost four years after the liability was triggered.  975 F.2d 498, 501-02 (8th Cir. 1992).  Here, like in Vaughn, Defendants' laches defense focuses on the delay in notifying Defendants of their withdrawal liability.  See Opp'n at 21 ("Despite their knowledge that Clark's closed, Plaintiffs did not notify Defendants of their alleged withdrawal liability until five years later.").  Because Defendants failed to initiate arbitration, the laches defense is waived.  See also Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Industry Pension Fund, 73 F.3d 1, 3-4 (1st Cir. 1996) ("questions concerning the timeliness of a plan sponsor's demand are governed exclusively by § 1399(b)(1)" and must be submitted to arbitration).

In arguing against waiver of this defense, Defendants rely on In re Centric Corp., 901 F.2d 1514, 1518-19 (10th Cir. 1990).

United States District Court
For the Northern District of California

Opp'n at 23.  The Court of Appeals for the Tenth Circuit determined that "[l]aches in the prosecution of an action to collect the amount assessed" is not barred by a failure to arbitrate in a situation where the trustees reopened a case that had been stayed pending a bankruptcy proceeding, and where the trustees failed to oppose an objection to their proof of claim in the bankruptcy proceeding.  Id. at 1518-19.  In Vaughn, the Court of Appeals for the Eighth Circuit distinguished In re Centric Corp. by noting that the delay at issue in the Tenth Circuit case was a delay in bringing suit, not a delay in providing notice of withdrawal liability.  Vaughn, 975 F.2d at 502.  Here, like in Vaughn, Defendants focus on a delay in providing notice of withdrawal liability.  Opp'n at 21.  Therefore, the Court finds that In re Centric Corp. is distinguishable.  Defendants have waived the defense of laches by failing to initiate arbitration.

**E.   Defense of Release/Settlement**

Defendants' second affirmative defense is that "[e]ach and every claim is barred by the parties' 2004 Stipulated Release/Settlement."  Answer at 5.

**1.   The Affirmative Defense of Release Was Not Waived by Defendants' Failure to Initiate Arbitration**

Plaintiffs' first argument is that Defendants waived their right to argue that the 2004 Stipulation released them from a claim for withdrawal liability because Defendants failed to initiate arbitration.  Mot. at 8.  The Court disagrees.  Disputes that have to be arbitrated concern "the establishment, computation and collection of withdrawal liability."  Shelter Framing Corp. v.

11

**United States District Court**
For the Northern District of California

Pension Benefit Guar. Corp., 705 F.2d 1502, 1509 (9th Cir. 1983),
rev'd on other grounds, 467 U.S. 717 (1984).  Defendants' argument
that the 2004 Stipulation released Defendants from an obligation
to pay withdrawal liability has nothing to do with the
establishment, computation, or collection of withdrawal liability.
In Board of Trustees of Trucking Employees of North Jersey Welfare
Fund, Inc. v. Centra, the Third Circuit determined that the issue
of whether there had been a breach of a settlement agreement did
not fall into any of the categories that the MPPAA deems
arbitrable.  983 F.2d 495, 506-07 (3d Cir. 1992)("Centra").
Similarly, here, the question of whether the language in the 2004
Stipulation releases Defendants from a claim for withdrawal
liability is not a dispute that has to be submitted to an
arbitrator.  Failure to arbitrate does not waive the defense of
release.

> **2.   The Stipulation Does Not Release Defendants from
> Withdrawal Liability**

Having determined that Defendants have not waived this
affirmative defense, the Court now considers whether Plaintiffs
should be granted summary judgment with respect to this defense.
Federal law governs the validity of and defenses to purported
releases of federal causes of action.  Petro-Ventures, Inc. v.
Takessian, 967 F.2d 1337, 1340 (9th Cir. 1992).  The federal law
in this area arises through the incorporation of "state rules of
decision," which "furnish an appropriate and convenient measure of
the governing federal law."  Mardan Corp. v. C.G.C. Music, Ltd.,
804 F.2d 1454, 1458 (9th Cir. 1986); Lumpkin v. Envirodyne

12

*Industries, Inc.*, 933 F.2d 449, 458 (7th Cir. 1991)(relying on state law to determine scope of release of ERISA claims); *Central States, Southeast and Southwest Areas Pension Fund v. Art Pape Transfer, Inc.*, 881 F. Supp. 1168, 1172-73 (N.D. Ill. 1995)(relying on state law to interpret language of settlement agreement in ERISA withdrawal liability action).

The interpretation of a release is governed by the same principles applicable to any other contractual agreement. *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006). Under California law, a release is the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced, and its effect is to extinguish the cause of action. *Id.* The court must interpret the release so as to give effect to the parties' mutual intent as it existed when they contracted. *See* Cal. Civ. Code § 1636; *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992).

When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible to the interpretation urged by the party. *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524 (Ct. App. 2003). In interpreting an unambiguous contractual provision, the court must give effect to the plain and ordinary meaning of the language used by the parties. *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684 (Ct. App. 2000). Where contract language is clear and explicit and does not lead to absurd results, the court ascertains intent from the written terms and goes no further. *Shaw v. Regents of*

United States District Court
For the Northern District of California

University of Cal., 58 Cal. App. 4th 44, 53 (Ct. App. 1997).  The

court's paramount consideration in construing a stipulation is the

parties' objective intent when they entered into it.  People ex

rel. Lockyer, 107 Cal. App. 4th at 525.  That intent is to be

inferred, if possible, solely from the written provisions of the

contract.  Id.; see also 66 Am. Jur. 2d Release § 31 ("The scope

of a release is determined by the intention of the parties as

expressed through a release's terms considering all the facts and

circumstances.  This rule stems from the proposition that a

release comes about from a meeting of the minds.  The intention of

the parties is is to be gathered from the language of the release

itself and this is particularly the case where the language of the

release is facially unambiguous.")

Here, the Court agrees with Plaintiffs that this Stipulation

is not reasonably susceptible to the interpretation that it

releases Defendants from withdrawal liability.  The only place the

word "release" occurs in the Stipulation is in paragraph 21, where

it is mentioned in the context of an integration clause clarifying

that any other agreements or understandings of the parties are

superseded by this Stipulation.  The only reasonable

interpretation of the phrase "no party released herein" is as a

reference to the fact that, earlier in the Stipulation, the

plaintiffs waived their right to seek liquidated damages and

interest from the defendants.  See Stipulation ¶ 16.  The words

"withdrawal liability" appear nowhere in the Stipulation, and it

is clear that the Stipulation focused on outstanding

contributions, not withdrawal liability.  See id. ¶¶ 2, 3, 4, 6,

14

11, 13.

Under California's parol evidence rule, "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code Civ. Proc. § 1856(a). The Stipulation could not be any clearer that it is an integration. It states explicitly that:

> This Agreement embodies the entire Agreement between the parties hereto. All prior understandings and agreements by and between the parties hereto are merged into and superseded by this Agreement and no party released herein shall be bound by or liable for any statement, representation, promise, inducement or understanding of any kind or nature not set forth herein.

Stipulation ¶ 21. Based on the written provisions of this Stipulation, the Court finds that the Stipulation is not ambiguous, and that it does not release Defendants from a claim for withdrawal liability.[6]

The Court is mindful that, under California law, even when a contract appears to the court to be unambiguous, extrinsic

---

[6] Although at an earlier stage of these proceedings, the Court regarded the text of the Stipulation as somewhat ambiguous, see Docket No. 25 ("Order Denying Defendants' Motion to Dismiss") at 11, further reflection upon the matter, including consideration of the arguments in the parties' summary judgment papers, convinces the Court that the Stipulation is not reasonably susceptible to the interpretation advanced by Defendants. Oftentimes, the Court comes to view matters in a clearer light after the parties have more fully briefed the relevant issues. It is now clear to the Court that there is no ambiguity in the Stipulation regarding this question of whether it releases Defendants from a claim for withdrawal liability.

evidence can be used "to prove a meaning to which the language of the instrument is reasonably susceptible." Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968); see also Haggard v. Kimberly Quality Care, Inc., 39 Cal. App. 4th 508, 519-20 (Ct. App. 1995).  A court "provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged . . . ." Wolf v. Super. Ct., 114 Cal. App. 4th 1343, 1351 (Ct. App. 2004) (quoting Winet v. Price, 4 Cal. App. 4th 1159, 1165 (Ct. App. 1992).  A court's determination of whether an ambiguity exists is a question of law.

Having reviewed the extrinsic evidence, the Court finds that the Stipulation is not ambiguous.  Thurn, who negotiated the Stipulation on behalf of Clark's Welding, first became familiar with withdrawal liability in 2008.  Babu Decl. Ex. J ("Thurn Dep.") at 19:4-19.  Therefore, Thurn could not have intended to release his clients from withdrawal liability when he negotiated the 2004 Stipulation on behalf of Clark's Welding.  In support of a contrary reading of the Stipulation, Defendants point to Thurn's letter to Mainguy, attorney for Operating Engineers, stating that "[t]his proposal would settle all claims of our client through July 31, 2003."  Opp'n at 2; Thurn Decl Ex. B.  But since there is no question that Thurn was not familiar with withdrawal liability at that time, he cannot have intended to release his clients from such a claim.

According to Thurn, he informed Mainguy that any settlement

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

the parties reached had to resolve all past, present, and future obligations between Defendants and Operating Engineers. Thurn Decl. ¶ 6. On this motion for summary judgment, the evidence of the nonmoving party must be believed. See Anderson, 477 U.S. at 255. However, there is no language in the Stipulation stating that it releases Defendants from all future obligations. Instead, the Stipulation states that it "embodies the entire Agreement between the parties" and that "[a]ll prior understandings and agreements by and between the parties hereto are merged into and superseded by this Agreement and no party released herein shall be bound by or liable for any statement, representation, promise, inducement or understanding of any kind or nature not set forth herein." Stipulation ¶ 21. Since the Agreement is clearly integrated, and since it nowhere states that Defendants are released from future obligations or claims, any contrary understanding on the part of Mr. Thurn is superseded by the text of the Stipulation.

Wayne MacBride, the collections manager for Operating Engineers, testified that he understood the Stipulation to be releasing Clark's Welding from the claim for liquidated damages, interest, and audit shortages, and he did not intend for it to release Clark's Welding from any future liability. Babu Decl. Ex. K ("Wayne Dep.") at 103:2-24. Mainguy is the attorney who signed the Stipulation on behalf of Operating Engineers. See Stipulation at 8. Her recollection of the case is very poor. Ferrannini

**United States District Court**
For the Northern District of California

Decl. Ex. B ("Mainguy Dep.") at 10:9-13.[7]  However, at her

original deposition, she stated that the Stipulation settled what

the complaint was filed for and nothing more.  Id. at 59:12-16,

75:15-16.  The Complaint was filed to recover delinquent

contributions, not withdrawal liability.  See Walters Compl.  At

her second deposition, she reiterated that she would not have

entered into a global settlement, releasing Defendants from all

known and unknown claims.  Ferrannini Supplemental Decl. Ex. A

("Second Mainguy Dep.") at 96:8-97:4.[8]

While the Court does not need to consider extrinsic evidence,

since the integrated agreement is clear on its face that it does

not release Defendants from withdrawal liability, having reviewed

the extrinsic evidence, the Court is still convinced that the

Stipulation is not reasonably susceptible to any other

interpretation.  The Court GRANTS summary judgment in favor of

Plaintiffs with respect to Defendants' affirmative defense of

release.[9]

///

---

[7]  Cassandra M. Ferrannini ('Ferrannini"), a partner at Downey Brand LLP, filed a declaration in support of Defendants' Opposition.  Docket No. 77-1.

[8] Ferrannini filed a Supplemental Declaration in support of Defendants' Opposition.  Docket No. 112-1.

[9]  When ruling on a motion for summary judgment, the Court must not weigh the evidence or make credibility determinations. Anderson, 477 U.S. at 255.  California law is clear, however, that receiving evidence to determine if an agreement contains a latent ambiguity is a question of law for the court to decide.  See Wolf v. Super. Ct., 114 Cal. App. 4th at 1351.  Even though Thurn intended for the Stipulation to release Defendants from future claims, the Stipulation does not say that, and it unambiguously supersedes all prior understandings.

18

United States District Court
For the Northern District of California

### F.   Defense of Waiver

Defendants' seventh affirmative defense is that "[e]ach and every claim is barred by the doctrine of waiver."  Answer at 6.  A waiver is "the voluntary and intentional relinquishment of a known right."  Petro-Ventures, 967 F.2d at 1342.  To be valid a waiver must be a clear expression made with a full knowledge of the facts and an intent to waive the right.  Spellman v. Dixon, 256 Cal. App. 2d 1, 5 (Ct. App. 1967).  Doubtful cases will be decided against the one who claims a waiver.

In the 2004 Stipulation, Plaintiffs waived the liquidated damages and interest that Plaintiffs contended they were owed by Defendants.  Stipulation ¶ 16.  The Stipulation does not waive Plaintiffs' right to seek withdrawal liability.  The Stipulation contains no mention of withdrawal liability.  See Stipulation.

There is no evidence to support the contention that Plaintiffs intended to waive their right to withdrawal liability. As noted earlier, Thurn, who negotiated the Stipulation on behalf of Clark's Welding, first became familiar with withdrawal liability in 2008.  See Part IV(E)(2), supra.  Thurn, therefore, could not have discussed a waiver of withdrawal liability with Plaintiffs' attorneys.  One of the letters exchanged between counsel for the parties prior to the Stipulation mentions Plaintiffs' willingness to waive liquidated damages and interest. Thurn Decl. Ex. C ("October 15, 2003 Letter").  No letter mentions a waiver of Plaintiffs' right to withdrawal liability.  See Thurn Decl. Ex. B ("Oct. 6, 2003 Letter"); October 15, 2003 Letter, Ex. D ("December 18, 2003 Letter"); Ex. E ("January 13, 2004 Letter");

Ex. F ("January 15, 2003 Letter").  There is no triable issue of material fact related to the issue of whether Plaintiffs intentionally relinquished a known right to withdrawal liability. Therefore the Court GRANTS Plaintiffs' motion for summary judgment with respect to Defendants' seventh affirmative defense of waiver.

### G.   Failure to Mitigate

Defendants' tenth affirmative defense is that "Plaintiffs have failed to mitigate their alleged losses or damages, if any." Answer at 6.  The Court finds no evidence in the record to support Defendants' contention that Plaintiffs failed to mitigate their damages.  See Iron Workers' Local No. 25 Pension Fund v. Klassic Services, Inc., 913 F. Supp. 541, 546 (E.D. Mich. 1996)(finding no duty to mitigate damages in ERISA action to collect delinquent fringe benefits).  The Court GRANTS Plaintiffs' motion for summary judgment with respect to the affirmative defense of failure to mitigate.

### H.   Unclean Hands

Defendants' fifth affirmative defense states that "[e]ach and every claim is barred by the doctrine of unclean hands."  Answer at 6.  Defendants contend Plaintiffs had unclean hands because they filed the present lawsuit even though the Stipulation absolved Defendants of all obligations to Operating Engineers. Opp'n at 17.  Having found, as a matter of law, that the Stipulation does not release Defendants from withdrawal liability, see Part IV(E)(2), supra, Defendants' allegation does not support an unclean hands defense.

Defendants allege that Plaintiffs did not assess withdrawal

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

liability in a timely manner.  Opp'n at 17.  This defense overlaps with the defense of laches, which is waived due to the failure to arbitrate.  See Part IV(D), supra.  Plaintiffs allege that Defendants' conduct leading up to the execution of the Stipulation deceived them into thinking it contained a general release.  Opp'n at 17-18.  However, the text of the Stipulation contains nothing resembling a general release, and it contains an explicit integration clause superseding all prior understandings and agreements.  See Stipulation ¶ 21.

Finally, Defendants contend that Plaintiffs' May 2008 and June 2008 letters deceived them into thinking the time to request arbitration had already expired.  Opp'n at 18.  However, the June 26, 2008 Letter clearly states that Defendants could seek review "within 90 days after receipt of this letter," and it also provides the time limits for requesting arbitration.  June 26, 2008 Letter at OE3PP000710.  The Court finds there is no triable issue of material fact with respect to the affirmative defense of unclean hands.  The Court grants summary judgment in favor of Plaintiffs regarding this affirmative defense.

### I.  Estoppel

Defendants' fourth affirmative defense states that "[e]ach and every claim is barred by the doctrine of estoppel."  Answer at 6.  The federal common law elements of equitable estoppel are: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and

1  (4) he must rely on the former's conduct to his injury.  Greany v.

2  W. Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992).

3  Defendants' estoppel defense is based on the allegation that

4  Defendants notified Plaintiffs they expected the Stipulation to

5  cover every obligation they had to Operating Engineers, and

6  Defendants allege Plaintiffs misrepresented and concealed their

7  true intentions from Defendants.  Opp'n at 19.  The Court is

8  obliged to rely on the parties' objective manifestation of intent

9  as memorialized in the text of the 2004 Stipulation, and the

10  Stipulation nowhere states that Defendants are released from all

11  obligations.  See Part IV(E)(2), supra.  Defendants also contend

12  Plaintiffs misrepresented that the time to seek arbitration had

13  expired, but as noted in the previous section, the June 26, 2008

14  letter indicates otherwise.  See Part IV(H), supra.  The Court

15  GRANTS summary judgment in favor of Plaintiffs regarding the

16  affirmative defense of estoppel.

17  **J.   Withdrawal Liability**

18  "If no arbitration proceeding has been initiated . . . the

19  amounts demanded by the plan sponsor under section 1399(b)(1) of

20  this title shall be due and owing on the schedule set forth by the

21  plan sponsor.  The plan sponsor may bring an action in a State or

22  Federal court of competent jurisdiction for collection." Id.

23  § 1401(b)(1).  Having found that Defendants did not initiate

24  arbitration, and that there is no triable issue of material fact

25  concerning Defendants' affirmative defenses, the Court finds that

26  Plaintiffs are entitled to collect withdrawal liability of

27  $330,921.  See Teamsters Pension Trust Fund-Bd. of Trustees of the

28

United States District Court
For the Northern District of California

W. Conference v. Allyn Transp. Co., 832 F.2d 502, 505-06 (9th Cir. 1987) (affirming district court's grant of summary judgment, holding that employer's liability as calculated by fund was due and owing because employer failed to initiate arbitration within statutory period); Bd. of Trs. of the W. Conference of Teamsters Pension Trust Fund v. Arizona-Pacific Tank Lines, No. 83-0317, 1983 U.S. Dist. LEXIS 12709, at *4-6 (N.D. Cal. Oct. 14, 1983) (refusing to consider affirmative defense and granting plaintiff's motion for summary judgment for withdrawal liability after defendants' failure to arbitrate dispute).  Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner. See 29 U.S.C. § 1401(b)(1).

While the assessment of withdrawal liability that results from a failure to arbitrate produces a harsh result, the result is largely "a self-inflicted wound." I.L.G.W.U. Nat'l Ret. Fund v. W. Helena-Helena Sportswear, Inc., No. 96-1007, 1996 U.S. Dist. LEXIS 20635 (S.D.N.Y. July 25, 1996); I.L.G.W.U. Nat'l Ret. Fund v. Levy Bros. Frocks, 846 F.2d 879, 887 (2d Cir. 1988).  The Court finds that Clark's Welding is liable for withdrawal liability in the amount of $330,921.

**K.   Other Damages and Individual Liability**

ERISA provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent

United States District Court
For the Northern District of California

contribution . . . ."  29 U.S.C.A. § 1451(b).  The statute
concerning delinquent contributions requires the Court to award
Plaintiffs unpaid contributions, interest, liquidated damages up
to 20% of the amount of the liability, and reasonable attorney's
fees and costs.  29 U.S.C. § 1132(g)(2).  "Under ERISA, the award
of attorney fees to a pension plan is mandatory in all actions to
collect delinquent contributions . . . . This mandatory attorney
fees provision applies in all actions to collect delinquent
contributions . . . including actions to collect unpaid employer
withdrawal liabilities."  <u>Trs. of Amalgamated Ins. Fund v. Geltman</u>
<u>Indus., Inc.</u>, 784 F.2d 926, 931-32 (9th Cir. 1986).

    The Court requires Plaintiffs to move the Court for an award
of interest, liquidated damages, and reasonable attorney's fees
and costs.  The motion should also address the basis for entering
judgment against the individual Defendants, Haberman and
Edelmayer.  Interest should be calculated based on the June 26,
2008 notice date, and the interest calculation should include an
amount due through the date of submission, and an amount to be
added each day thereafter until judgment is finally entered.
Plaintiffs must also support their request for liquidated damages,
and reasonable attorney's fees and costs.  The Court hereby
schedules an April 30, 2010 hearing on the motion for an award of
interest, liquidated damages, and reasonable attorney's fees and
costs.  The motion, opposition, and reply should be filed in
accordance with this Court's local rules.

///

///

24

**United States District Court**
For the Northern District of California

1   **V.    CONCLUSION**

2        For the reasons stated above, the Court GRANTS IN PART and

3   DENIES IN PART the Motion for Summary Judgment filed by Plaintiffs

4   Operating Engineers' Pension Trust Fund, Gil Crosthwaite, and Russ

5   Burns, as Trustees.   The Court finds that Plaintiffs are entitled

6   to an award of $330,921 against Defendant Clark's Welding and

7   Machine.   Plaintiffs must move the Court for an award of interest,

8   liquidated damages, and reasonable attorney's fees and costs, and

9   the motion should also explain how judgment can be entered against

10  Defendants Sylvester Haberman and Franz Edelmayer.   The motion

11  will be heard on April 30, 2010.   Once the Court has ruled on the

12  motion, the Court will enter a final judgment in this case.

13

14       IT IS SO ORDERED.

15

16       Dated: February 10, 2010

17       _____

18                 UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28