United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPERATING ENGINEERS' PENSION TRUST FUND; GIL CROSTHWAITE AND RUSS BURNS, as Trustees,<br><br>    Plaintiffs,<br><br>    v.<br><br>CLARK'S WELDING AND MACHINE, a California partnership, aka CLARK'S WELDING, aka CLARK'S WELDING AND MACHINING; SYLVESTER HABERMAN, individually, and FRANZ EDELMAYER, individually,<br><br>    Defendants. | Case No. 09-0044 SC<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR AWARD OF INTEREST, ATTORNEYS' FEES AND COSTS |

## I. INTRODUCTION

This matter comes before the Court on the Motion for Award of Interest, Attorneys' Fees and Costs ("Motion") filed by Plaintiffs Operating Engineers' Pension Trust Fund ("Operating Engineers"), Gil Crosthwaite ("Crosthwaite"), and Russ Burns ("Burns"), as Trustees (collectively "Plaintiffs"). Docket No. 121. Defendants Clark's Welding and Machine ("Clark's Welding"), Sylvester Haberman ("Haberman"), and Franz Edelmayer ("Edelmayer") (collectively "Defendants") filed an Opposition, and Plaintiffs filed a Reply. Docket Nos. 126, 127. For the reasons stated herein, the Motion is GRANTED IN PART.

## II. BACKGROUND

On January 7, 2009, Plaintiffs filed their Complaint against Defendants seeking payment of withdrawal liability in the sum of $330,921. Docket No. 1 ("Compl.") ¶ 1. On February 10, 2010, the Court granted in part and denied in part Plaintiffs' Motion for Summary Judgment. Docket No. 115 ("Feb. 10, 2010 Order"). In that Order, the Court outlined the facts of this case, and the Court assumes the parties' familiarity with those facts. The Court found Clark's Welding liable for withdrawal liability in the amount of $330,921. Id. at 23. The Court required Plaintiffs to file a motion for interest, liquidated damages, and reasonable attorneys' fees and costs, and to explain the basis for entering judgment against the individual Defendants, Haberman and Edelmayer. Id. at 24. That motion is presently before the Court.

## III. LEGAL STANDARD

Under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), an employer who withdraws from an underfunded pension plan is required to pay "withdrawal liability," an amount equal to that employer's pro rata share of the plan's unfunded vested benefits, subject to certain adjustments. 29 U.S.C. §§ 1381, 1391. ERISA provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution . . . ." 29 U.S.C. § 1451(b). In an action to

2

1  enforce payment of delinquent contributions, "the court shall
2  award the plan -- (A) the unpaid contributions, (B) interest on
3  the unpaid contributions, (C) an amount equal to the greater of --
4  (i) interest on the unpaid contributions, or (ii) liquidated
5  damages provided for under the plan in an amount not in excess of
6  20 percent . . . (D) reasonable attorney's fees and costs . . . ."
7  29 U.S.C. § 1132(g)(2).

**IV. DISCUSSION**

**A.  Defendants Haberman and Edelmayer**

Clark's Welding was a partnership. Babu Fees Decl. Ex. C ("Edelmayer Dep.") at 22:24-23:3.[1] Edelmayer and Haberman were partners in the partnership. Id. at 22:24-23:12. Edelmayer and Haberman purchased Clark's Welding in 1975, and they were the owners of Clark's Welding until they closed their business in 2003. Edelmayer Decl. ¶¶ 2-4.[2] Their wives also had ownership interests in Clark's Welding. Id. at 23:13-22. Defendants concede that Clark's Welding was a partnership. See Opp'n at 6.

29 U.S.C. § 1381 provides that when an employer withdraws from a multiemployer plan, "then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." Section 1381 is silent as to whether partners are

---

[1] Shaamini A. Babu ("Babu"), an associate at Saltzman & Johnson Law Corporation, filed a Declaration in Support of Plaintiffs' Motion for Attorneys' Fees. Docket No. 122.

[2] Franz Edelmayer filed a Declaration in Support of Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees. Docket No. 126-2.

3

liable for withdrawal payments of the partnership. However, based on the text of 29 U.S.C. § 1405(c), and the legislative history of 29 U.S.C. § 1451(c), the Ninth Circuit determined that the MPPAA "contemplates individual withdrawal liability where the employer is a . . . partnership [even though it] does not expressly create such liability." Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson, 830 F.2d 1009, 1014-15 (9th Cir. 1987).[3] As noted by the Ninth Circuit, "[a]bsent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership." Id. at 1015 (citing Uniform Partnership Act § 17). Relying on these principles, and treating joint venturers as similar to partners in a partnership, the Ninth Circuit held joint venturers personally liable for the withdrawal liability of their joint venture. Id. It follows that the Ninth Circuit would hold partners personally liable for the withdrawal liability of their partnership.

A number of other federal courts have so held. See Connors v. Ryan's Coal Co., 923 F.2d 1461, 1466 (11th Cir. 1991) (affirming district court's determination of individual liability based on spouse's interest as partner or joint venturer in cattle farm operation); Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Domenic Cristinzio, Inc., 994 F. Supp. 617, 623-24 (E.D. Pa. 1998) (finding general partner personally liable for

---

[3] 29 U.S.C. § 1405(c) suggests "a member of a partnership" may have to pay withdrawal liability, and the legislative history of 29 U.S.C. § 1451(c) states that "[t]he Committees recognize that some employers that are obligated to contribute to multiemployer plans are individuals, i.e. sole proprietors or partners." 126 Cong. Rec. S20195 (daily ed. July 29, 1980).

4

withdrawal liability of two partnerships in control group); <u>United Food & Commercial Workers Union v. Progressive Supermarkets</u>, 644 F. Supp. 633, 642 (D.N.J. 1986) (personal liability for partners).

California's Corporations Code provides that "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." Cal. Corp. Code § 16306(a). Defendants acknowledge this code provision, but suggest that the claimant did "otherwise agree," and that the Trust Agreement released Edelmayer and Haberman from liability. Opp'n at 4. Defendants rely on Article II, Section 7 of the Trust Agreement, which provides:

> Neither the Employer or any Signatory Association, nor any officer, agent, employee or committee member of the Employer or Signatory Association shall be liable to the Fund or with respect to this Pension Plan, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he may incur liability as a Trustee as hereinafter provided.

Ferrannini Decl. Ex. N ("Trust Agreement") at 8-9.[4]

Defendants' contention that this section of the Trust Agreement released Edelmayer and Haberman from liability is without merit. The Trust Agreement defines "Employer" as the "Associated General Contractors of California, Inc." and "Signatory Association" as "any association of Contributing Employers." <u>Id.</u> at 2, 5-6. An "Individual Employer" is a person

---

[4] Cassandra M. Ferrannini, partner at Downey Brand LLP, filed a Declaration in Support of Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees. Docket No. 126-4.

or entity required to make payments to the pension trust fund. Id. at 3-4. While Article II, Section 7 of the Trust Agreement provides that the Associated General Contractors of California, Inc., and Signatory Associations, are not required to make pension fund contributions, it does require Individual Employers -- like Clark's Welding -- to do so.

In its 2004 Stipulation, Clark's Welding acknowledged its requirement to make pension fund contributions. See Feb. 10, 2010 Order at 3. While the 2004 Stipulation focused on delinquent contributions, this Court previously found Clark's Welding liable for the later assessment of withdrawal liability. Id. at 22-23. The question now before the Court is whether the partners in this partnership can also be held liable for that obligation. Article II, Section 7 of the Trust Agreement has no bearing on this question, and provides no support for Defendants' contention that Operating Engineer's "otherwise agreed" that Edelmayer and Haberman could not be held liable for the obligations of Clark's Welding. Since partners are liable for all obligations of the partnership, and since Operating Engineer's did not otherwise agree, the Court finds that Edelmayer and Haberman are liable for the withdrawal liability of Clark's Welding.[5]

### B.   Delinquency Collection Procedures

In their motion for summary judgment, Plaintiffs filed a declaration stating that the Delinquency Collection Procedures

---

[5] Having found Haberman and Edelmayer liable as partners, the Court does not need to address Plaintiffs' argument that Haberman and Edelmayer are liable as alleged owners of a leasing business. Mot. at 4-7.

6

United States District Court
For the Northern District of California

1  specify liquidated damages of 15%, and an interest rate of 12% on
2  delinquent contributions.  Babu Decl. in Support of Mot. for
3  Summary Judgment ¶ 6.[6]  The Delinquency Collection Procedures were
4  not attached to the declaration.  Defendants objected that
5  Plaintiffs never identified the Delinquency Collection Procedures
6  with their Initial Disclosures.  Docket No. 77-7 ("Evidentiary
7  Objections") at 8-10.  Plaintiffs responded by filing excerpts of
8  the Delinquency Collection Procedures, and a declaration
9  authenticating the document.  Docket No. 80 ("Supplemental
10 Declaration of Michael Schumacher in Support of Motion for Summary
11 Judgment") ¶ 5, Ex. G ("DCP").
12    Federal Rule of Civil Procedure 37(c) provides that "[i]f a
13 party fails to provide information . . . as required by Rule 26(a)
14 or (e), the party is not allowed to use that information . . . to
15 supply evidence on a motion . . . unless the failure was
16 substantially justified or is harmless."  Fed. R. Civ. P. 37(c).
17 The Court ruled that the Delinquency Collection Procedures were
18 inadmissible because of Plaintiffs' failure to disclose them.
19 Feb. 10, 2010 Order at 7.  After finding Plaintiffs' liable for
20 withdrawal liability, the Court required Plaintiffs to address the
21 assessment of liquidated damages, interest, and attorneys' fees in
22 a separate motion, in part to give the parties an opportunity to
23 address whether the failure to disclose was substantially
24 justified or harmless.  See id. at 24.

---

[6] Shaamini A. Babu, associate at Saltzman & Johnson Law Corporation, filed a Declaration in Support of Plaintiffs' Motion for Summary Judgment.  Docket No. 51.

7

Having considered the parties' arguments, the Court now finds that the failure to disclose the Delinquency Collection Procedures was harmless. Plaintiffs' counsel concedes that the failure to disclose was an error, but states there was no intention to conceal relevant information. Babu Fees Decl. ¶ 5. Defendants contend they were harmed because "Plaintiffs' conduct effectively denied Defendants an opportunity to depose individuals who possessed knowledge of the DCP [Delinquency Collection Procedures] and applicable interest rates and fully examine the DCP." Opp'n at 16.

The Court can discern no harm to Defendants due to their inability to question deponents about the applicable interest rate and amount of liquidated damages. The purpose of early disclosures is "to prepare for trial or make an informed decision about settlement." Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a). While the Court does not condone Plaintiffs' failure to disclose the document at issue, this failure did not hamper Defendants' ability to develop their case, or impede their ability to make an informed decision about settlement. Since before this lawsuit was filed, Defendants knew that if the Court found them liable for withdrawal payments, then -- by statute -- the Court would be required to award Plaintiffs interest and liquidated damages. See Babu Fees Decl. Ex. A ("Oct. 10, 2008 Letter"). At issue here is a failure to disclose the rate and amount of payment, not the fact of payment. Indeed, the statute requiring liquidated damages put Defendants on notice that the amount could be as high as twenty percent of withdrawal

8

liability. See 29 U.S.C. § 1132(g)(2)(C).  Under these circumstances, the Court will admit the Delinquency Collection Procedures for the limited purpose of calculating the appropriate interest and liquidated damages.

### C. Interest

The Court is required to award Plaintiffs interest on the unpaid withdrawal liability. 29 U.S.C. §§ 1451(b), 1132(g)(2). The Delinquency Collection Procedures specify that 12% interest accrues. Supplemental Declaration of Michael Schumacher in Support of Mot. for Summary Judgment ¶ 5; Ex. G ("DCP"). Plaintiffs contend that interest accrues on the withdrawal liability from July 1, 2008, the due date of the first payment. Mot. at 7-8. Plaintiffs seek to recover $68,979.20 as 12% interest on the withdrawal liability of $330,921 from July 1, 2008 until March 26, 2010. Babu Fees Decl. Ex. F ("Interest Calculation"). This amount is based on a daily interest rate of $108.80. Id.

In their Opposition, Defendants do not contest these calculations. However, the Court will limit Plaintiffs' award to the period from July 1, 2008, to February 10, 2010, the date on which the Court could have entered judgment if it did not require extra briefing on the admissibility of the document necessary to perform the calculation. To allow interest to continue accruing after that date would reward Plaintiffs for their failure to disclose the Delinquency Collection Procedures. Based on the daily interest rate of $108.80, interest from July 1, 2008, to February 10, 2010, results in an award of $64,192.

9

**D. Liquidated Damages**

The Delinquency Collection Procedures specify that liquidated damages are assessed at 15% of delinquent contributions. Supplemental Declaration of Michael Schumacher in Support of Mot. for Summary Judgment ¶ 5; Ex. G ("DCP"). 15% of the withdrawal liability of $330,921 is $49,638.15. Mot. at 13. The Court is required to award an amount equal to the greater of the interest or the liquidated damages. 29 U.S.C. § 1132(g)(2)(C). Here, the interest is greater than the liquidated damages. Hence, the Court awards Plaintiffs an extra $64,192.

**E. Attorneys' Fees**

When the Court awards withdrawal liability, an award of reasonable attorneys' fees is mandatory. Trs. of Amalgamated Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926, 931-32 (9th Cir. 1986). Defendants concede that Plaintiffs are entitled to fees, but contest the amount requested. Opp'n at 17.

When awarding fees under ERISA, "the court must determine a 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Credit Managers Ass'n of S. Cal. v. Kennesaw Life and Accident Ins. Co., 25 F.3d 743, 750 (9th Cir. 1994)("Kennesaw")(quoting D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383 (9th Cir. 1990). Reasonable rates are determined by reference to the marketplace. Missouri v. Jenkins, 491 U.S. 274, 285 (1989). The determination of a reasonable hourly rate "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying

10

clients for legal work of similar complexity." Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2007)(quoting Davis v. City and County of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (1993)). The Court should exclude from the fee calculation hours that were not reasonably expended. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

After calculating the lodestar, the district court must assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the Kerr factors that are not already subsumed in the initial lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 363-64 nn. 8-10 (9th Cir. 1996). The factors courts must consider are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr v. Screen Extras Guild, 526 F.2d 67, 70 (9th Cir. 1975). While the Court must consider all of the Kerr factors, when issuing an order, the Court need only discuss those factors relevant to the Court's decision. Kennesaw, 25 F.3d at 750.

11

Here, Saltzman & Johnson billed Plaintiffs at the following rates: paralegals at $110 per hour; associates at $180-185 per hour; and shareholders at $255 per hour. Babu Fees Decl. ¶ 18, Exs. L, M, N. Opp'n at 17. Plaintiffs submitted evidence showing that these rates are in line with those prevailing in the marketplace. Mot. at 14-16; Babu Decl. ¶ 12, Exs. H, I, J, K. In Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc., the court, in an ERISA action seeking payment of delinquent contributions, found attorney rates of $210 per hour, and $345 per hour, to be reasonable. 389 F. Supp. 2d 1222, 1227-28 (N.D. Cal. 2005). In ERISA long term disability cases, courts in this district have awarded fees based on partner hourly rates as high as $450 per hour. See May v. Metropolitan Life Ins. Co., No. 03-5056, 2005 WL 839291, at *3-4 (N.D. Cal. Apr. 7, 2005). Defendants do not dispute that Plaintiffs' hourly rates are reasonable. Opp'n at 17. The Court finds the rates are reasonable.

Plaintiffs' attorneys submitted billing records showing that its attorneys and paralegals expended a total of 583.45 hours on this case, and billed a total of $100,030.25 for services provided. Babu Fees Decl. ¶¶ 16-19, Exs. L, M, N; Johnson Decl. ¶¶ 5-6; Sicula Decl. ¶ 2.[7] Saltzman & Johnson have provided the Court with detailed documentation showing how much time each attorney worked on this case, and showing how much time its

---

[7] Richard C. Johnson, a shareholder at Saltzman & Johnson Law Corporation, and Michelle Sicula, an associate at Saltzman & Johnson Law Corporation, filed Declarations in Support of Plaintiffs' Motion for Attorneys' Fees. Docket Nos. 123, 124.

12

attorneys and paralegals expended on each phase of this litigation, including the complaint, case management conference, mediation, written discovery, depositions, working on motions, and responding to Defendants' motions. Babu Fees Decl. Exs. L, M, N.

This complex case, which hinged on the question of whether a 2004 Stipulation released Defendants from the requirement to pay withdrawal liability, raised a host of novel and difficult questions. The Court ruled on a motion to dismiss, a motion to strike, and a motion for summary judgment, and a number of discovery motions were pending when the Court ruled on the summary judgment motion. The Court granted in part summary judgment in favor of Plaintiffs, finding that the Stipulation did not release Defendants. See February 10, 2010 Order. Attorneys representing both Plaintiffs and Defendants proved themselves to be skillful advocates, and it took fifteen months for the issues in this case to be resolved. Plaintiffs' attorneys successfully defended their clients' interests despite the assertion of numerous affirmative defenses, and they convinced the Court that the pension fund is entitled to $330,921 in withdrawal liability. As such, and having closely reviewed the billing records of Plaintiffs' attorneys, the Court finds that Plaintiffs' request for $100,030.25 in attorneys' fees is reasonable. As explained below when addressing Defendants' objections, the Court finds that a minor adjustment to this lodestar calculation is warranted.

**F. Defendants' Objections to Fees Requested**

Defendants contend that Plaintiffs are not entitled to $7218 in fees associated with four depositions, and $14,166.50 in fees

13

associated with Defendants' two motions to compel and motions for sanctions. Opp'n at 18. Defendants accuse Plaintiffs' counsel of engaging in "bad faith discovery games." Id. Neither this Court, nor the Magistrate Judge dealing with discovery disputes, made such a determination. The number of depositions conducted in this case was not excessive, and Plaintiffs' attorneys had no choice but to respond to discovery motions filed by Defendants' counsel. The Court finds that the time expended on depositions and discovery motions was reasonable.

Defendants challenge Plaintiffs' effort to recover $10,670 in fees for the work of three paralegals on the basis that most of their work was purely clerical or secretarial. Opp'n at 19-20. In Missouri v. Jenkins, the Supreme Court noted that "purely clerical or secretarial tasks should not be billed at a paralegal rate . . . ." 491 U.S. 274, 288 n. 10 (1989). Clerical or secretarial tasks include filing, updating the calendar, and faxing. See Feezor v. Del Taco, Inc., No. 04-0097, 2005 WL 3619388, at *2 (S.D. Cal. June 23, 2005).

The Court does not agree with Defendants that the paralegals spent most of their time engaging in purely clerical or secretarial work. Vikashni Pooni ("Pooni") spent most of her time checking cites, drafting documents and correspondence, researching relevant rules, and coordinating meetings necessary to this litigation and in anticipation of court deadlines. See Babu Fees Decl. Ex. N ("Pooni Billing Records"). Elizabeth Skeels ("Skeels") spent much of her time engaged in research, coordinating depositions, cite checking, reviewing deposition

14

1  transcripts, and drafting appropriate documents.  See id. ("Skeels
2  Billing Records").  Pamela Soto ("Soto") spent time preparing
3  hearing binders, performing interest calculations, and checking
4  cites.  See id. ("Soto Billing Records").  These are not clerical
5  or secretarial tasks, and so the Court denies Defendants' request
6  to reduce the paralegal fees.

7       Defendants point out that there is a discrepancy of $229
8  between the records submitted, and Plaintiffs' speadsheets showing
9  how much time each attorney and paralegal spent on discrete phases
10 of the litigation.  Opp'n at 22.  Plaintiffs attribute the
11 discrepancy to an error in data entry.  Mot. at 18 n.6.
12 Defendants contend there is inadequate documentation to support
13 this fee of $229.  Opp'n at 22.  In their Reply, Plaintiffs do not
14 address this contention.  The Court will reduce the fee award by
15 the disputed amount of $229.

16      Defendants contend the attorney fees requested by Michelle
17 Sicula ("Sicula") should be excluded because her work on the
18 defense of laches was duplicative of the work performed by
19 Shaamini Babu ("Babu") and Richard Johnson ("Johnson").  Opp'n at
20 22.  The Court disagrees.  While this Court ultimately determined
21 that the defense of laches was waived due to a failure to initiate
22 arbitration, see February 10, 2010 Order at 11, that point was
23 vigorously contested in this litigation, and it makes sense to the
24 Court that more than one attorney would be working on the issue.
25 The time sheets submitted do not indicate that Sicula's work on
26 the issue was duplicative or unnecessary, especially in light of
27 the fact that Plaintiffs prevailed on the issue.

15

Defendants contend that the fees requested by Johnson should be reduced or eliminated because his time entries are too vague and because Defendants' counsel interacted with Johnson on only one occasion, at the parties' mediation. Opp'n at 23-24. In light of Johnson's role as a shareholder at Saltzman & Johnson, his time entries reflect the fact that he oversaw and reviewed the work product of associates billing at lower rates who performed the bulk of the work on this case. The Court does not find his time entries to be vague. Nor was it unreasonable for Johnson to bill 27.25 hours in a case that lasted over fifteen months. Also, the Court does not find that the time Plaintiffs' counsel spent substantiating their claim for interest to be unreasonable. In light of the foregoing, the Court awards Plaintiffs $99,801.25 in attorneys' fees.

**G.  Costs**

The Court is required to award Plaintiffs their reasonable costs. 29 U.S.C. §§ 1451(b), 1132(g)(2). Plaintiffs seek to recover $11,521.31 in costs for filing fees, fees for service of process, deposition transcript costs, fees for online research, investigation costs, and delivery costs. Mot. at 21-24.

Defendants object to recovery of $1529.10 in costs associated with four of the nine depositions based on Plaintiffs' alleged "unjustified discovery games." Opp'n at 24. As noted earlier, there has been no finding of unjustified discovery behavior in this case, and therefore the Court will not reduce costs on that basis.

Defendants object to costs of $3000 for financial

16

investigations of Edelmayer and Haberman incurred to ascertain control group members. Opp'n at 24. Defendants contend that the investigations were unnecessary because Defendants produced information concerning Edelmayer's and Haberman's properties in response to discovery requests. Id; Ferrannini Decl. ¶¶ 8-10, Exs. D, E, F. However, that information was produced on September 14, 2009. See Ferrannini Decl. ¶ 10. Plaintiffs have been seeking information concerning Defendants' control group members since before this litigation began in January 2009. See Schumacher Decl. in Support of Plaintiffs' Mot. for Summary Judgment Ex. D ("June 26, 2008").[8] Since Defendants did not produce financial information until September 2009, the investigation costs incurred in July 2009 appear to have been necessary. The Court will not reduce Plaintiffs' requested investigation costs by $3000.

Plaintiffs seek delivery costs of $139.02. Babu Fees Decl. ¶ 26. Plaintiffs provided no documentation supporting this request. Where the documentation is inadequate, the district court may reduce the award. Hensley, 461 U.S. at 433. The Court reduces Plaintiffs' requested costs by $139.02.

---

[8] Michael Schumacher, Executive Vice-President of Associated Third Party Administers, filed a Declaration in Support of Plaintiffs' Motion for Summary Judgment. Docket No. 69. Plaintiffs requested the Court to take judicial notice of this declaration filed earlier in this case. Docket No. 125. The Court does not need to take judicial notice of documents filed earlier in this case, but the Court will take judicial notice of the fact that Plaintiffs sought information concerning trades or businesses under Defendants' common control on June 26, 2008.

**V.     CONCLUSION**

For the reasons stated above, the Court finds that Defendants Franz Edelmayer and Sylvester Haberman are jointly and severally liable for the withdrawal liability of Clark's Welding.  The Court awards Plaintiffs Operating Engineers' Pension Trust Fund, Gil Crosthwaite, and Russ Burns, as Trustees, a double interest payment of $128,384, attorneys' fees of $99,801.25, and costs of $11,382.29.

IT IS SO ORDERED.

Dated: April 27, 2010

_____
UNITED STATES DISTRICT JUDGE

18